NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1031

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 237044

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming a decision by the Sex Offender Registry Board (board) classifying him as a level one sex offender.  On appeal, Doe argues that the board's classification was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence, and a violation of his due process rights.  We affirm.

Background.  We summarize the facts as set forth in the hearing examiner's decision, "supplemented by undisputed facts from the record."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011).

In September 2005, a fourteen year old boy (victim) reported a sexual assault to Rhode Island police.  The victim

reported that two weeks prior he had skipped school with a friend, Gordon.[1]  On the way to Gordon's home, they met up with then twelve year old Doe and two of Doe's friends, Maxwell and Cody.  When the group got to Gordon's home, a dispute arose, resulting in Doe holding a knife to the victim's nose and threatening to cut him.  Doe subsequently told Cody to hold the victim in a chair and directed Maxwell to punch the victim in the face.  Doe also hit the victim in the face with a ring, causing him to bleed.

Following their initial assault of the victim, Doe, Maxwell, and Cody went to Gordon's mother's bedroom and put on a pornographic film.  Eventually the victim went to the bedroom and asked the group what they were doing.  When the victim entered the bedroom, Cody demanded that the victim perform oral sex on him, and Doe threatened to hit the victim with a hammer he was holding if the victim did not comply.  The victim did comply, and Cody also inserted a pen into the victim's anus.  Doe and Maxwell then told the victim to go to Gordon's brother's room.  Doe and Cody told the victim that if he did not bend over they would "go after [the victim] and [his] family."  Doe then struck the victim in the arm with the hammer, forcing him to bend over, and Cody anally raped the victim.  After this

---

[1]  All the children's names are pseudonyms.

assault, Doe told Maxwell to bring the victim to the bathroom and, in so doing, Maxwell again punched the victim in the face. Once Doe and the victim were in the bathroom, Doe also anally raped the victim.

In November 2005, Doe admitted to sufficient facts and was adjudicated delinquent of a single count of first-degree child molestation and sexual assault.  Doe was sentenced to probation supervision and was eventually placed at the Stetson School in Barre, Massachusetts.[2]  Then, in 2007, Doe was adjudicated delinquent of threatening to commit a crime and attempted murder after participating in a riot and strangulation of a staff member at the Stetson School.  In May 2009, while Doe was still on probation, the board classified Doe as a level two sex offender.  In 2012, as an adult, Doe was convicted of three counts of assault and battery on hospital staff.

Almost ten years later, in April 2021, Doe submitted a motion to the board seeking to terminate his obligation to register as a sex offender.  As a result, in January 2022, the board conducted a de novo hearing pursuant to G. L. c. 6, § 178L.  At the hearing, Doe and the board submitted records documenting Doe's extended psychiatric hospitalizations dating

---

[2] The Stetson School is a licensed private residential institution that specializes in treating male children who exhibit disordered behavior or have mental health issues.

3

back to his youth.  Notably, Doe has been diagnosed with "paranoid schizophrenia, antisocial personality, impulse control disorder, psychosis NOS, oppositional disorder and conduct disorder."  Additionally, in October 2018, Doe was admitted to a behavioral health facility following a psychotic episode and aggressive behavior toward his mother.  After declining treatment, Doe was civilly committed at Taunton State Hospital in March of 2019, where he remained at the time of the 2022 hearing.  Following the hearing, the examiner denied Doe's motion to terminate his registration obligation, but reduced Doe's classification to a level one sex offender.  Doe now appeals from the Superior Court judgment affirming this classification.

Discussion.  1.  Standard of review.  A reviewing court may set aside a decision of the board if it determines "that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law" (citation omitted).  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022).  The reviewing court shall "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006), quoting G. L.

4

c. 30A, § 14 (7). As a result, Doe "bears a heavy burden of establishing that the [board]'s decision was incorrect" (citation omitted). Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).

2. Classification determination. Doe contends that the examiner's decision was arbitrary and capricious, an abuse of discretion, and not supported by substantial evidence, because the examiner could not support a finding that Doe continued to present anything but a speculative risk of reoffense or danger to the community and unduly emphasized "Doe's mental health, and the criminal conduct and behavioral issues he exhibited while at the various hospitals and treatment centers he has been confined to since his index offense." Doe also contends that the hearing examiner's application of regulatory factor 35 was an error of law. We disagree.

To support a level one classification, the board must prove, by clear and convincing evidence, that Doe's "risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability" of Doe's registry information. Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 646 (2019), quoting G. L. c. 6, § 178K (2) (a). "[R]egistration can be required only based on an assessment 'of the person's current level of dangerousness and risk of

5

reoffense'" (emphasis omitted).  Doe, Sex Offender Registry Bd.
No. 24341 v. Sex Offender Registry Bd., 74 Mass. App. Ct. 383,
387 (2009) (Doe No. 24341), quoting Doe, Sex Offender Registry
Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 787
(2008).  "SORB's burden is to show that Doe presents a
'cognizable risk of reoffense,' not merely a hypothetical or
speculative potential risk."  Doe No. 24341, supra at 388,
quoting Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender
Registry Bd., 447 Mass. 750, 762 (2006).

Here, the hearing examiner correctly applied and weighed
several regulatory factors that support a finding of a low risk
of reoffense.  For example, the hearing examiner applied factors
7 (relationship between offender and victim) and 19 (level of
physical contact) with increased weight because Doe and the
victim were strangers, and Doe penetrated the victim with his
penis.  See 803 Code Mass. Regs. § 1.33(7), (19) (2016).  The
hearing examiner also appropriately applied both factor 8
(weapons, violence or infliction of bodily injury) because of
Doe's use of weapons against the victim and the violent nature
of the assaults, and factor 9 (alcohol and substance misuse)
because Doe has a history of substance misuse.  See 803 Code
Mass. Regs. § 1.33(8), (9).  The examiner further applied
additional risk-elevating factors such as factor 10 (contact
with the criminal justice system), factor 11 (violence unrelated

6

to sexual assaults), and factor 13 (noncompliance with community supervision), citing Doe's criminal record that includes violent offenses and his failure to comply with probation requirements. See 803 Code Mass. Regs. § 1.33(10), (11), (13).

In addition to the risk-aggravating factors, the examiner also applied three risk-mitigating factors, taking into account Doe's offense-free time in the community, sex offender treatment, and home situation and support systems. See 803 Code Mass. Regs. § 1.33(29), (32), (33). The examiner also applied factor 35 (psychological or psychiatric profiles regarding risk to reoffend), noting that while Doe's current hospitalization is risk mitigating, his mental health diagnoses elevate his risk to reoffend should he be discharged. See 803 Code Mass. Regs. § 1.33(35). Finally, the examiner considered factor 37 (other information related the nature of the sexual behavior), taking into account a variety of articles that Doe submitted detailing, inter alia, how racial bias impacts the sex offender registration process as well as the criminal justice system more generally. See 803 Code Mass. Regs. § 1.33(37). However, the examiner did not give these articles any weight in her analysis.

Doe cites no case law to support his contention that the hearing examiner's application of factors 7, 8, 9, and 19 was improper or "stale" because her analysis focused on Doe's index

offense which he committed seventeen years ago as a juvenile.[3]

Indeed, the hearing examiner properly considered Doe's age at the time of his offense throughout her analysis, and correctly noted how certain factors apply to juvenile offenders. See 803 Code Mass. Regs. § 1.33. See also G. L. c. 6, § 178K (1) (e) (acknowledging that factors relevant to person's classification include whether offender "was a juvenile when he committed the offense"). Furthermore, Doe's argument that the board provided insufficient evidence to support the hearing examiner's application of factors 10, 11, and 13 is without merit. Doe's criminal history and failure to comply with community supervision is readily apparent in the record.

We are further unpersuaded by Doe's contention that the hearing examiner's application of factor 35 was an error of law because the examiner failed to rely on any evidence that Doe's mental health issues correlate to his risk of reoffense. Factor 35 instructs the board to "consider evaluative reports, empirically-based risk assessment instruments, or testimony from a licensed mental health professional that discuss psychological and psychiatric issues, including major mental illness, as they relate to the offender's risk of reoffense." 803 Code Mass. Regs. § 1.33(35). Here, the record contains multiple

---

[3] The examiner rendered her decision in 2022.

evaluations of Doe from licensed professionals indicating that Doe's mental health issues have contributed significantly to his criminal record and continue to cause Doe to be resistant to treatment. As the judge below aptly noted:

> "The record is replete with reports and assessments, including interviews with Doe, that indicate he was experiencing feelings of paranoia and concerns of what others thought of him immediately preceding the sexual offense in 2005. As Doe progressed to discussing his sexual offense with counselors and in group therapy, he himself related the thought processes that eventually led to his mental health diagnoses to the sexual assault. The evaluative reports and assessments in the record clearly and convincingly relate Doe's mental health, as it was assessed at the time of his most recent and continuing hospitalization, to his risk to reoffend."

Therefore, following her evaluation of the record evidence, the examiner did not err in concluding that Doe may be unstable "outside of a secure setting, thus elevating his risk to reoffend should he be discharged."

Finally, we also disagree that the hearing examiner engaged in a mechanical application of the factors and failed to "provide any explanation for how she balanced them." Rather, the examiner identified each regulatory factor applied and explained the reason for its application; in several instances, the examiner also specified the weight assigned to the factor based on the specifics of Doe's case. As such, the hearing examiner's "[analytical] path may reasonably be discerned" from the decision, NSTAR Elec. Co. v. Department of Pub. Utils., 462

9

Mass. 381, 387 (2012), quoting Costello v. Department of Pub. Utils., 391 Mass. 527, 535-536 (1984), and it is clear that "the classification is based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).

Accordingly, the hearing examiner's level one classification was not an abuse of discretion, arbitrary and capricious, unsupported by substantial evidence, or a violation of Doe's due process rights.

Judgment affirmed.

By the Court (Meade, Desmond & D'Angelo, JJ.[4]),

Clerk

Entered:  May 8, 2025.

---

[4] The panelists are listed in order of seniority.